**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

AMERICAN BANCARD, LLC D/B/A
TOUCHSUITE and AB SPE II, LLC

              Plaintiffs,

vs.

EAST PAYMENT SOLUTIONS, INC., FBS
PAYMENT SOLUTIONS, LLC, MICHAEL
BEN-SIMON and JACOB BEN-SIMON

              Defendants.

_____/

CASE NO. 18-CV-80681

**AMENDED COMPLAINT**

Plaintiffs, AMERICAN BANCARD, LLC d/b/a Touchsuite[fi] and AB SPE II, LLC, by and through its undersigned counsel, sues Defendants, EAST PAYMENT SOLUTIONS, INC., FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, stating as follows:

**IDENTIFICATION OF THE PARTIES**

1.     Plaintiff, AMERICAN BANCARD, LLC d/b/a Touchsuite[fi] ("American Bancard") is a Florida limited liability company that maintains its principal place of business in Boca Raton, Florida.

2.     Plaintiff, AB SPE II, LLC ("AB SPE") (collectively with American Bancard, the "Plaintiffs") is a Florida limited liability company that maintains its principal place of business in Boca Raton, Florida.

3.     Defendant, EAST PAYMENT SOLUTIONS, INC. ("EPS") is a Maryland corporation that maintains its principal place of business at 7361 Calhoun Place, Suite 470, Rockville, Maryland 20855.

4.      Defendant, FBS Payment Solutions, LLC ("FBS") is a Florida limited liability company that maintains its principal place of business at 33 SE 8th Street, #424, Boca Raton, Florida 33432.

5.      Defendant MICHAEL BEN-SIMON is over the age of eighteen, a resident of Maryland and otherwise *sui juris*.

6.       Defendant JACOB BEN-SIMON is over the age of eighteen, a resident of Maryland and otherwise *sui juris*.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8.      Venue is proper in this Court pursuant to the provisions of 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b), as a substantial part of Defendants' conduct and the events giving rise to Plaintiffs' claims occurred in the Southern District of Florida, and/or the parties have agreed that venue is proper in this Court.

## GENERAL ALLEGATIONS

9.      American Bancard provides point-of-sale payment processing services for credit card transactions.

10.      As part of its business, American Bancard provides merchants with electronic equipment and a platform enabling vendors to process credit card transactions.

11.      **Independent Sales Agreement.**  On February 18, 2014, American Bancard and EPS entered into that certain document titled Independent Sales Agreement (the "Sales Agreement"), whereby EPS agreed to solicit customers for American Bancard's services in exchange for payment of a commission from American Bancard.  A true and correct copy of the Sales Agreement is attached hereto as **Exhibit A** and is incorporated by reference herein.

12.     Pursuant to the Sales Agreement, EPS agreed that for a period of five years they would not solicit, or interfere with in any way, the merchant accounts.  Specifically, Section 6.1 of the Sales Agreement states:

> Non-Solicitation of Merchants.  Without TOUCHSUITE's prior written consent, Agent shall not cause or permit any of its employees, agents, principals, affiliates, subsidiaries, Sales Persons (including Sales Personnel) or any other person or entity (i) to solicit or provide services to any merchant; (ii) to solicit or otherwise cause any Merchant to terminate its participation in the Merchant Program; or (iii) to solicit or market services to any merchant that is already directly or indirectly provided Merchant Card Services by TOUCHSUITE, whether or not such are provided under the terms of this Agreement.  This Section 6.1 shall survive for a period of five (5) years following any termination of this Agreement.

Sales Agreement, Sect. 6.1.

13.     On May 5, 2014, American Bancard and EPS entered that certain document titled Addendum (the "Sales Agreement Addendum"), which modified the Sales Agreement.  Pursuant to the Sales Agreement Addendum, EPS now agreed to "board a minimum of twenty (20) new merchant accounts per month …" for three years from the date of the Sales Agreement Addendum.  Sales Agreement Addendum, p.1.  A true and correct copy of the Sales Agreement Addendum is attached hereto as **Exhibit B** and is incorporated by reference herein.

14.     **Residual Purchase Agreement.**  On May 5, 2014, AB SPE, American Bancard, EPS, Michael Forst, Michael Ben-Simon and Jacob Ben-Simon entered into an agreement entitled Residual Purchase Agreement (the "Residual Purchase Agreement"), pursuant to which AB SPE bought the right to certain residual payments owed to EPS.  Specifically, AB SPE retained the first $25,000.00 of net residuals each month for the first two years following closing, with the remaining residual payments going to EPS.  After two years, AB SPE was provided the right to choose a certain number of merchant accounts to equal a residual payment of $25,000.00 per month to retain in perpetuity.  A true and correct copy of the Residual Purchase Agreement is attached hereto as **Exhibit C** and is incorporated by reference herein.

15.     In consideration of the purchase of the residual payments, AB SPE paid EPS a total of $900,000.00, with $800,000.00 paid at the closing, and an additional $100,000.00 paid after certain performance criteria were met.

16.     Additionally, AB SPE agreed to provide EPS with a credit facility up to $500,000.00 based upon the terms set forth in a separate Revolving Line of Credit Loan and Security Agreement.

17.     The Residual Purchase Agreement provided that EPS would not take any action to discourage business relationships between AB SPE and/or its affiliates.  Specifically, Residual Purchase Agreement stated:

> Transition.  AGENT shall not take any action that is designed or intended to have the effect of discouraging any Acquired Merchant from maintaining the same business relationships with Buyer or its Affiliates after the Closing Date as it maintained with Agent prior to Closing.

Residual Purchase Agreement, Sect. 6.3.

18.     EPS additionally agreed that for a period of five years they would not solicit, or interfere with in any way, the customer accounts that were the subject of the agreement.  In particular, Section 6.5 of the Residual Purchase Agreement states:

> "In order to induce BUYER to enter into this Agreement, SELLER hereby agrees, that during the period from the date hereof to and including the fifth anniversary of the date of this Agreement, SELLER shall not, directly or indirectly, through any agent or representative, on behalf of SELLER direct or indirect, benefit, knowingly and intentionally (i) cause or induce any of the Acquired Merchants or New Merchants to do business with any competitor of BUYER, or to cease doing business with, reduce business with, or divert business from BUYER, or (ii) in any way interfere with the relationship between any of the Acquired Merchants or New Merchants, on the one hand, and BUYER, on the other hand, or attempt to do any of the foregoing…."

Residual Purchase Agreement, Sect. 6.5.

19.     The Residual Purchase Agreement also prohibited EPS from taking any action regarding merchants or merchant agreements, and stated:

> Dealings with Acquired Merchants.  After the Closing, neither Agent nor any of Agent's employees shall take any action with respect to the Acquired Merchants and/or the Merchant Agreements (including, without limitation, granting any approval or waiver, and/or modifying or terminating any of said agreements) without the prior written consent of Buyer in each case, not to be unreasonably withheld, conditioned or delayed.

Residual Purchase Agreement, Sect. 6.8.

20.     The Residual Purchase Agreement was amended on three separate occasions:  (i) On October 9, 2014, that certain agreement entitled Amendment to the Residual Purchase Agreement ("First Amendment to Residual Purchase Agreement") was executed, increasing, among other things, the amount of residuals purchased per month from $25,000.00 to $27,500.00 for a period of two years from the date of execution of the First Amendment to Residual Purchase Agreement; (ii) On December 23, 2014, that certain agreement entitled Second Amendment to the Residual Purchase Agreement ("Second Amendment to Residual Purchase Agreement") was executed, increasing, among other things, the amount of residuals purchased per month from $27,500.00 to $30,000.00 for a period of two years from the date of execution of the Second Amendment to Residual Purchase Agreement; and (iii) On November 2, 2015, that certain agreement entitled Earnout Amendment to the Residual Purchase Agreement (the "Earnout Amendment") was executed, increasing the Earnout by an additional $100,000.00 and extending the exclusive period that EPS was required to submit merchant accounts to AB SPE for an additional two years from the date of execution of the Earnout Amendment.  A true and correct copy of the First Amendment to the Residual Purchase Agreement, Second Amendment to the Residual Purchase Agreement and the Earnout Amendment are attached hereto as **Exhibits D, E and F**, respectively.

21. **Revolving Line of Credit Loan and Security Agreement.**  In connection with the Residual Purchase Agreement, on May 5, 2014, EPS, Michael Forst, Michael Ben-Simon and Jacob Ben-Simon executed and delivered the Revolving Line of Credit Loan Agreement (the "Credit Line"), to AB SPE in the amount of $500,000.00.  A true and correct copy of the Credit Line is attached hereto as **Exhibit G**.  The Credit Line provided a security interest to AB SPE in certain EPS assets. Pursuant to the Credit Line, the borrowers provided certain covenants to AB SPE, including the following:

> **(C) Merchant Agreements.**  Not to (i) terminate, or otherwise cause or permit the termination of, the Independent Sales Agent Agreement unless due to default of Processor, (ii) solicit or encourage any Merchant to terminate its Merchant Agreements or any agreement such Merchant has with Processor, (iii) sell, assign, exchange or otherwise dispose of any of the Compensation or Merchant Agreements, or (iv) create, permit to be created or suffer to exist any lien, encumbrance or security interest of any kind ("Lien") upon the Collateral except a Lien in favor of Lender or a Lien in favor of Processor under the Independent Sales Agent Agreement;

> **(V)  Residuals.**  Not to permit any credit card transactions or debit card transactions generated by any Merchants to be processed other than by Processor under the Independent Sales Agent Agreement unless consented in writing by Lender, such consent not to be unreasonably withheld, conditioned or delayed.

> **(W) Minimum Volume.**  Borrower will submit to Processor a minimum of 20 new Merchant applications per month while this Agreement remains in effect, in accordance with the terms of the Addendum to the Independent Sales Agent Agreement.

Credit Line, Sect. 5.1(C),(V) & (W).

22. The following draws were made on the Line of Credit:

    a.      11-06-2014 - $80,000
    b.      02-13-2015 - $40,000
    c.      03-03-2015 - $20,000
    d.      04-06-2015 - $20,000
    e.      05-15-2015 - $20,000
    f.      06-19-2015 - $20,000
    g.      08-03-2015 - $30,000
    h.      08-31-2015 - $30,000
    i.      09-30-2015 - $25,000

j.     10-14-2015 - $20,000
k.     01-05-2016 - $20,000
l.     02-16-2016 - $30,000
m.    05-16-2016 - $30,000
n.     04-17-2017 - $50,000
o.     06-08-2017 - $40,000

23.    **Formation of Touchsuite East, LLC.**  On or about February 2, 2016, Touchsuite East, LLC ("Touchsuite East") was formed with the filing of its Articles of Organization (the "Articles") with the Secretary of State of the state of Florida.

24.    Touchsuite East was formed as a joint venture between American Bancard and FBS.  FBS was a newly formed entity, created by Michael Ben-Simon, Jacob Ben-Ben Simon and Michael Forst to enter into the joint venture with American Bancard, with each owning 33.3% of FBS.

25.    Pursuant to the Operating Agreement of Touchsuite East, LLC (the "Operating Agreement"), American Bancard and FBS each owned 50% of the joint venture.  A true and correct copy of the Operating Agreement is attached hereto as **Exhibit H** and is incorporated by reference herein.  This ownership structure was later modified by the Touchsuite East, LLC Amended and Restated Operating Agreement (the "Amended Operating Agreement"), executed on March 1, 2017, which increased the ownership percentage of American Bancard to 66.7% and reduced FBS' ownership to 33.3%.  A true and correct copy of the Amended Operating Agreement is attached hereto as **Exhibit I** and is incorporated by reference herein.

26.    Pursuant to the terms of the Operating Agreement, the members were bound by a confidentiality and non-disclosure agreement, which specifically stated:

Section 11.01.   Confidentiality and Non-Disclosure.   In consideration of the promises contained in this Agreement regarding the transactions as contemplated herein, each Member and its respective members, officers, directors, owners and stockholders covenant and agree that **they will not, without the approval of the Majority in Interest, during the term of the Member's ownership of Percentage Interests hereunder or any time thereafter forever**, directly or

indirectly, personally or for or on behalf of any entity or person, except within the scope of his/its providing services to the Company:

(A) Disclose, divulge, reveal, transfer, publish, copy, use or cause to be disclosed, disseminated, or distributed either directly, indirectly or through another, to any person, contractor, firm, association, corporation, or business entity or enterprise, and knowledge or information discussed during the course of his working relationship with the Company or belonging to the Company, or any other Confidential or Proprietary Information.

(B) Remove any files, charts, documents or information contained in any files or charts otherwise pertaining to the Company or **clients or customers of the Company**.

(C) Upon termination or withdrawal as a Member, or at any time such Member ceases to provide services to the Company, such Member shall return all Company property to the Company, including, but not limited to, Confidential or Proprietary Information, contained in hard copy and/or electronic medium.

(D) The term "Confidential or Proprietary Information" as used herein shall mean any and all information not in the public domain……. including but not limited to…. customers and prospective customers…

\*\*\*

Section 11.03. <u>Violations.</u>   The Members agree that any violation of the obligations of confidentiality and non-use set forth herein would be likely to be highly injurious to the Company**.  The Members consent and agree that if a Member violates any of the provisions of this Article XI, the Company and remaining Members shall be entitled, in addition to any other rights and remedies that they may have, including money damages, to apply to any court of law or equity of competent jurisdiction for specific performance and for injunctive or other relief in order to enforce or prevent any continuing violation of the provisions hereof.**

Operating Agreement, Sections 11.01 and 11.03 (emphasis added).

27.     Additionally, the Operating Agreement contained certain restrictive covenants,

which included the following:

Section 13.02.   <u>Principals, FBS Payment Solutions LLC, and East Payment Solutions Inc.'s Obligations.</u>  Principals, FBS Payment Solutions LLC, and East Payment Solutions Inc. and its respective members, stockholders, officers, directors, employees, agents and representatives agree that at all times during which it is affiliated with a Member of the Company or any of its subsidiaries and, subject to the remainder of this Section 13.02 and Section 13.03, continuing for a period of three (3) years thereafter ("<u>Restrictive Period</u>"),

Principals, FBS Payment Solutions LLC, and East Payment Solutions Inc., and any Affiliate of Principals, FBS Payment Solutions LLC, and East Payment Solutions Inc., shall not, directly or indirectly, without written consent of the Majority Interest:

(C)  Take any action which could reasonably be expected to divert from the Company, or any Affiliate any opportunity which would be within the scope of the Company's, or such Affiliate's business; solicit or attempt to solicit, or provide any service to any person or entity who is or has been (A) a customer of the Company, or any Affiliate at any time to purchase any product or service which may be provided by the Company, or any of its Affiliates, or (B) a customer, supplier, licensor, licensee or other business relation of the Company or any Affiliate conducting business with the Company or such Affiliate; or, induce or encourage any officers, employees, representatives or agents of the Company or any Affiliate to terminate their association with the Company or any Affiliate.

***

Section 13.04.   Additional Covenants.   East Payment Solutions, Inc., and Principals shall provide Company with written notice identifying any person or entity which they propose to directly or indirectly own, manage, control participate in, consult with, render services for or be employed by during the Restricted Period, such notice to be provided at least thirty (30) days prior to East Payment Solutions Inc.'s proposed commencement of such activity.

Operating Agreement, Sections 13.02 & 13.04.

28.    **Defendants' Wrongful Conduct.**  In or about March 2017, EPS began sending a reduced number of new merchant accounts per month to the Plaintiffs.  Upon information and belief, the Plaintiffs believe that the Defendants were sending new merchant deals to other credit card processors in violation of the various agreements.

29.    Additionally, the residuals purchased pursuant to the Residual Purchase Agreement began to decline.  At the time of the filing of this Complaint, the residuals have declined over 72% from June 2017 until today.

30.    Upon information and belief, the Defendants have been wrongfully holding themselves out as agents of the Plaintiffs in order to swap out credit card terminals of merchants from American Bancard hardware to EPS hardware.  To accomplish this fraudulent scheme, the

Defendants required merchants to execute new agreements transferring control of the merchant account back to EPS while misrepresenting to merchants that the agreements were a mere formality in order to get the new hardware installed.  In some instances, Defendants transferred control of the merchant account without completing any paperwork.

31.     Additionally, upon information and belief, the Defendants forged merchant signatures on transfer agreements, without the consent of the merchant, whereby ownership of the merchant account was transferred from American Bancard to EPS.

32.     The new credit card machines that were placed with merchants were programmed to forward all residual payments that were due to the Plaintiffs, instead to EPS.

33.     American Bancard has been informed by multiple merchants that EPS entered their place of business and stated that the merchant needed to switch out their current credit card processing machine due to an issue with the credit card processor.  Instead, EPS transferred the account from American Bancard and back to itself.

34.     As a result of the Defendants' misconduct, Plaintiffs have been damaged in numerous ways, including but not limited to the following:

   a.   An advance made by American Bancard to EPS, in the amount of $118,752.00 has not been repaid;

   b.   An advance made by American Bancard to EPS, in the amount of $135,580.27, to open an office in Baltimore, Maryland, has not been repaid;

   c.   Touchsuite East has had leases on equipment charged back to it in the amount of $51,344.00;

   d.   Plaintiffs did not receive residuals from merchants that should have been boarded to American Bancard per the monthly minimum and/or exclusivity clauses included in the agreements described herein;

   e.   Loss of multiple merchant accounts; and

   f.   Loss of goodwill.

## COUNT I:  VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C. §1962(C)
### (As Against All Defendants)

35.    The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

36.    At all material times, EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon were an enterprise within the meaning of 18 U.S.C. § 1961(4) engaged in activities which affect interstate commerce.

37.    EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon participated directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5) by committing two or more offenses in furtherance of a scheme to defraud the Plaintiffs including mail and wire fraud and the use of other instrumentalities of interstate commerce in aid of their fraudulent activities.

38.    EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon, using means of mail and/or wire, solicited the Plaintiffs' merchants and moved the Plaintiffs' merchants from their platforms to other processing platforms, and switched the Plaintiffs' merchant's equipment and defrauded merchants into signing new merchant agreements with EPS.

39.    As a result of EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon's participation in the conduct of a pattern of racketeering in violation of 18 U.S.C. § 1962(c), the Plaintiffs have suffered damages in an amount in excess of $75,000.00 to date.

40.    By reason of the foregoing and pursuant to 18 U.S.C. § 1964, EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon are liable to the Plaintiffs for the amount of its loss, trebled, plus the costs of this action, including attorneys' fees.

WHEREFORE, the Plaintiffs, AMERICAN BANCARD, LLC and AB SPE II, LLC, respectfully demand judgment against the Defendants, EAST PAYMENT SOLUTIONS, INC.,

FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

(a)     Awarding damages in excess of $75,000.00, exclusive of costs, interest and attorney's fees, in an amount to be proven at trial;

(b)     Awarding trebled damages;

(c)     Awarding attorneys' fees and litigation costs incurred in prosecution of this action; and

(d)     Awarding the Plaintiffs such other and further relief as is deemed just and proper.

## COUNT II: PRELIMINARY AND PERMANENT INJUNCTION
### (As Against All Defendants)

41.     The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

42.     The Defendants continue to solicit merchants of the Plaintiffs and move those merchants from the Plaintiffs' platforms to other processing platforms belonging to, or controlled by the Defendants, continue to switch merchant equipment, and continue to defraud merchants into signing new merchant agreements with the Defendants.

43.     The Plaintiffs are without an adequate remedy at law and have suffered, and will continue to suffer, irreparable harm.

44.     The damage resulting from the Defendants' acts and omissions cannot be accurately and/or fully quantified so that they can be redressed by a monetary award and, therefore, American Bancard has no adequate remedy at law.

45.     The Plaintiffs have a clear legal right to the relief requested and have a substantial likelihood of success on the merits.

WHEREFORE, the Plaintiffs, AMERICAN BANCARD, LLC and AB SPE II, LLC demand judgment against Defendants, EAST PAYMENT SOLUTIONS, INC., FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

    (a)    Enjoining Defendants from directly or indirectly soliciting merchants of the Plaintiffs and/or moving merchants of the Plaintiffs from the Plaintiffs platforms to other processing platforms,

    (b)    Enjoining the Defendants from directly or indirectly switching the Plaintiffs merchant's equipment;

    (c)    Enjoining the Defendants from directly or indirectly defrauding merchants of the Plaintiffs into signing new merchant agreements with the Defendants.

    (d)    Awarding attorneys' fees and litigation costs incurred in prosecution of this action; and

    (e)    Granting the Plaintiffs such other and further relief as is deemed just and proper.

## **COUNT III:  FRAUD AND FRAUDULENT MISREPRESENTATION**
### **(As Against All Defendants)**

46.    The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

47.    EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon, made false statements of material fact, including the following:

    (a)    EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon wrongfully held themselves out as agents of the Plaintiffs in order to swap out merchant credit card terminals from the Plaintiffs to EPS;

    (b)    EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon required merchants of the Plaintiffs to execute new merchant agreements transferring control of the merchant to EPS by misrepresenting to merchants that the new agreements were only a formality to having the new hardware installed;

    (c)    EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon forged the signatures of merchants on agreements whereby ownership of the merchant account was transferred from the Plaintiffs to EPS;

(d)     EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon installed new credit card machines with merchants that were programed to send residual payments due to the Plaintiffs, to EPS, instead; and

(e)     EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon misrepresented to merchants that there was an issue with their credit card processing equipment in order to transfer their accounts from Plaintiffs to EPS.

48.     EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon either knew or should have known that their statements were false.

49.     EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon in making such false statements engaged in fraudulent activity which constituted actual fraud perpetrated against the Plaintiffs.

50.     EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon made the statements with the intention that it would induce merchants and the Plaintiffs to rely and act on the statements.

51.     EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon made the statements with the intention of committing actual fraud as against the Plaintiffs.

52.     EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon's actions were intentional in that they possessed actual knowledge of the wrongfulness of the conduct complained of herein and the high probability that injury or damage to the Plaintiffs would result and, despite that knowledge, intentionally pursued the course of conduct.

53.     Alternatively, EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon's actions were grossly negligent in that the conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of the Plaintiffs.

54.     As a direct and proximate result of EPS, FBS, Michael Ben-Simon and Jacob Ben-Simon's actions, the Plaintiffs suffered damages due to the merchants' justifiable reliance on the statements, including, but not limited to the loss the enterprise value of the Plaintiffs' businesses.

WHEREFORE, the Plaintiffs, AMERICAN BANCARD, LLC and AB SPE II, LLC, respectfully demand judgment against the Defendants, EAST PAYMENT SOLUTIONS, INC., FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

(a)    Awarding damages in excess of $75,000.00, exclusive of costs, interest and attorneys' fees, in an amount to be proven at trial;

(b)    Awarding attorneys' fees and litigation costs incurred in prosecution of this action;

(c)    Awarding the Plaintiffs such other and further relief as is deemed just and proper.

(d)    Plaintiffs further reserve the right to amend this Complaint to include a claim for punitive damages against the Defendants pursuant to Fla. Stat. § 768.72.

## COUNT IV: BREACH OF SALES AGREEMENT
### (As Against EPS)

55.    The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

56.    American Bancard and the EPS entered into the Sales Agreement.

57.    EPS failed to perform its contractual obligations and materially breached the Sales Agreement with the American Bancard.  EPS breached their obligations in numerous ways, including but not limited to:

(a)    Soliciting American Bancard merchants and/or moving American Bancard merchants from American Bancard platforms to other processing platforms;

(b)    switching American Bancard merchant's equipment with Defendants' equipment;

(c)    inducing American Bancard merchants into signing new merchant agreements with the Defendants; and

(d)    failing to provide a minimum of 20 new merchant accounts per month.

58.     As a direct and proximate result of the breaches, American Bancard has been damaged.

WHEREFORE, Plaintiff AMERICAN BANCARD, LLC demands judgment against Defendant, EAST PAYMENT SOLUTIONS, INC., as follows:

(a)     Awarding damages in an amount to be proven at trial;

(b)     Awarding costs, prejudgment and post judgment interest to the extent allowed by law;

(c)     Awarding attorney's fees pursuant to the terms of the parties' contractual agreement; and

(d)     Such other and further relief at law and in equity to which American Bancard is entitled.

## COUNT V: BREACH OF RESIDUAL PURCHASE AGREEMENT
### (As Against EPS, Michael Ben-Simon and Jacob Ben-Simon)

59.     The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

60.     American Bancard, AB SPE, EPS, Michael Ben-Simon and Jacob Ben-Simon entered into the Residual Purchase Agreement

61.     EPS, Michael Ben-Simon and Jacob Ben-Simon failed to perform their contractual obligations and materially breached the Residual Purchase Agreement in numerous ways, including but not limited to:

(a)     Soliciting the Plaintiffs' merchants and/or moving the Plaintiffs' merchants from the Plaintiffs' platforms to other processing platforms;

(b)     switching the Plaintiffs' merchant's equipment with the Defendants' equipment; and

(c)     inducing the Plaintiffs' merchants into signing new merchant agreements with the Defendants.

62.     As a direct and proximate result of EPS, Michael Ben-Simon and Jacob Ben-Simon's breaches, the Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs, AMERICAN BANCARD, LLC and AB SPE II, LLC demand judgment against the Defendants, EAST PAYMENT SOLUTIONS, INC., MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

      a.   Awarding damages in an amount to be proven at trial;

      b.   Awarding costs, prejudgment and post judgment interest to the extent allowed by law;

      c.   Awarding attorney's fees pursuant to the terms of the parties' contractual agreement; and

      d.   Such other and further relief at law and in equity to which Plaintiffs are entitled.

### COUNT VI: BREACH OF OPERATING AGREEMENT
**(As Against FBS, Jacob Ben-Simon and Michael Ben-Simon)**

63.     The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

64.     American Bancard, FBS, Michael Ben-Simon and Jacob Ben-Simon entered into the Operating Agreement.

65.     FBS, Michael Ben-Simon and Jacob Ben-Simon failed to perform their contractual obligations and materially breached the Operating Agreement in numerous ways, including but not limited to:

      (a)   Soliciting American Bancard's merchants and/or moving American Bancard's merchants from American Bancard platforms to other processing platforms;

      (b)   switching American Bancard's merchant's equipment with EPS equipment; and

      (c)   inducing American Bancard's merchants into signing new merchant agreements with the Defendants.

66.     As a direct and proximate result of breaches committed by FBS, Jacob Ben-Simon and Michael Ben-Simon, American Bancard has been damaged.

WHEREFORE, Plaintiff, AMERICAN BANCARD, LLC demands judgment against Defendants, FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

(a)     Awarding damages in an amount to be proven at trial;

(b)     Awarding costs, prejudgment and post judgment interest to the extent allowed by law;

(c)     Awarding attorney's fees pursuant to the terms of the parties' contractual agreement; and

(d)     Such other and further relief at law and in equity to which Plaintiff is entitled.

<u>**COUNT VII: BREACH OF CREDIT LINE**</u>
**(As Against EPS, Michael Ben-Simon and Jacob Ben-Simon)**

67.     The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

68.     EPS, Michael Ben-Simon and Jacob Ben-Simon executed and delivered the Credit Line to AB SPE.

69.     EPS, Michael Ben-Simon and Jacob Ben-Simon failed to perform their contractual obligations and materially breached the Credit Line in numerous ways, including but not limited to:

(a)     Soliciting Plaintiffs' merchants and/or moving Plaintiffs' merchants from their platforms to other processing platforms;

(b)     switching Plaintiffs' merchant's equipment with Defendants' equipment;

(c)     inducing Plaintiffs' merchants into signing new merchant agreements with the Defendants; and

(d)     failing to provide a minimum of 20 new merchant accounts per month.

70.     As a direct and proximate result of the breaches, Plaintiffs have been damaged.

WHEREFORE, Plaintiff AMERICAN BANCARD, LLC and AB SPE II, LLC demand judgment against the Defendants, EAST PAYMENT SOLUTIONS, INC., MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

(a)     Awarding damages in an amount to be proven at trial;

(b)     Awarding costs, prejudgment and post judgment interest to the extent allowed by law;

(c)     Awarding attorneys' fees pursuant to the terms of the parties' contractual agreement; and

(d)     Such other and further relief at law and in equity to which the Plaintiffs are entitled.

<u>**COUNT VIII: CIVIL CONSPIRACY**</u>
**(As Against All Defendants)**

71.     The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

72.     As more fully described above, EPS, FBS, Jacob Ben-Simon and Michael Ben Simon entered into a conspiracy between themselves and acted in concert to defraud the Plaintiffs.

73.     EPS, FBS, Jacob Ben-Simon and Michael Ben Simon acted contrary to law.  EPS, FBS, Jacob Ben-Simon and Michael Ben Simon acted according to a predetermined and commonly understood plan to transfer the Plaintiffs' merchants away from them to entities directly or indirectly under the control of EPS, FBS, Jacob Ben-Simon and Michael Ben Simon.

74.     There was a meeting of minds between and among EPS, FBS, Jacob Ben-Simon and Michael Ben Simon to commit the unlawful acts alleged herein.

75.     EPS, FBS, Jacob Ben-Simon and Michael Ben Simon's conduct has directly caused injury and damage to the Plaintiffs.

WHEREFORE, the Plaintiffs, AMERICAN BANCARD, LLC and AB SPE II, LLC demand judgment against Defendants, EAST PAYMENT SOLUTIONS, INC., FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

(a)     Awarding damages, interest and attorneys' fees, in an amount to be proven at trial;

(b)     Awarding the Plaintiffs prejudgment and post-judgment interest on the damages it proves;

(c)     Awarding attorneys' fees and litigation costs incurred in prosecution of this action; and

(d)     Awarding such other and further relief as is deemed just and proper.

## COUNT IX– CIVIL THEFT
### (As Against All Defendants)

76.     The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

77.     EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon have illegally and improperly acted in a manner to transfer American Bancard merchants away from the Plaintiffs to entities directly or indirectly under the control of EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon.

78.     Based on the Plaintiffs' investigation, they learned that residual payments due to the Plaintiffs on the improperly transferred merchant accounts were taken by the Defendants. Specifically, the Defendants received residual payments belonging to the Plaintiffs for the months of July 2017, August 2017 and September 2017. The Plaintiffs do not know if additional residual payments were taken by the Defendants.

79.     Thereafter, Plaintiffs discovered the theft of the merchant accounts, and the residual payments due for the months of October 2017 through the present were frozen and held by credit card processor, First Data Merchant Services, LLC ("First Data").

80.     The conduct of EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon constitutes theft as defined in Section 812.014(1), Florida Statutes (2015).

81.     On or about February 1, 2018, the Plaintiffs, pursuant to Section 772.11, Florida Statutes, delivered to Defendants a written civil theft notice making demand for the return of the illegally obtained property that was estimated, at the time of the correspondence, to be in the amount of $142,485.80.

82.     On May 18, 2018, EPS, American Bancard, First Data and Wells Fargo Bank, NA, entered into an agreement entitled Assignment and Assumption Agreement (the "Assignment Agreement"), whereby the improperly obtained merchant accounts were transferred back to the Plaintiffs' platforms.   Additionally, First Data transferred $191,407.05 to the Plaintiffs, which amount includes the residual payments held by First Data for the months of October 2017 through the present.

83.     However, to the date of this Amended Complaint, EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon have failed or refused to return  the residual payments improperly and illegally taken for the months of July 2017 through September 2017 (and at other times unknown to the Plaintiffs).  Additionally, the merchant accounts that were returned to the Plaintiffs under the Assignment Agreement, have lower economic profitability than prior to the theft due to different pricing structures and higher monitoring costs.

84.     As a direct and proximate result of the theft committed by EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon, the Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs AMERICAN BANCARD, LLC and AB SPE II, LLC demand judgment against the Defendants, EAST PAYMENT SOLUTIONS, INC., FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

(a) Awarding damages, interest and attorneys' fees, in an amount to be proven at trial;

(b) Awarding treble damages threefold the actual damages sustained by the Plaintiffs pursuant to 772.11, Florida Statutes;

(c) Awarding the Plaintiffs' prejudgment and post-judgment interest on the damages it proves;

(d) Awarding attorneys' fees and litigation costs incurred in prosecution of this action; and

(e) Granting the Plaintiffs such other and further relief as is deemed just and proper.

## COUNT X– CONVERSION
### (As Against All Defendants)

85. The Plaintiffs incorporate by reference as if fully set forth herein each of its allegations set forth above in paragraphs 1 to 34.

86. EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon had no right to or interest in the merchant accounts and/or residuals of the Plaintiffs.

87. By using, converting and transferring the merchant accounts and residuals, EPS, FBS, Jacob Ben-Simon and/or Michael Ben-Simon exercised dominion over the residuals and merchant accounts of the Plaintiffs that was inconsistent with and adverse to the ownership rights of the Plaintiffs.

88. By using and converting to their own the residuals and merchant accounts of the Plaintiffs, the Plaintiffs have been permanently and indefinitely deprived of their property.

89.    EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon continue to deprive the Plaintiffs of their property by refusing to return the residuals and merchant accounts despite the Plaintiffs' demand.

90.    EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon's action of withholding property belonging to the Plaintiffs is unauthorized and constitutes conversion of the Plaintiffs' property.

91.    EPS, FBS, Jacob Ben-Simon and Michael Ben-Simon have directly and proximately caused harm and damages to Plaintiffs.

WHEREFORE, the Plaintiffs, AMERICAN BANCARD, LLC and AB SPE II, LLC demand judgment against Defendants, EAST PAYMENT SOLUTIONS, INC., FBS PAYMENT SOLUTIONS, LLC, MICHAEL BEN-SIMON and JACOB BEN-SIMON, as follows:

(a)    Awarding damages in an amount to be proven at trial;

(b)    Awarding Plaintiffs' prejudgment and post-judgment interest on the damages it proves;

(c)    Awarding attorneys' fees and litigation costs incurred in prosecution of this action; and

(d)    Awarding such other and further relief as is deemed just and proper.

Dated this 13th day of June, 2018.                  Respectfully submitted,

**TRIPP SCOTT, P.A.**
*Counsel for the Plaintiffs*
110 S.E. Sixth Street, Fifteenth Floor
Fort Lauderdale, Florida 33301
Tel.:    (954) 525-7500
Fax:    (954) 761-8475

By: /s/ *Charles M. Tatelbaum*
        Charles M. Tatelbaum
        Florida Bar No. 177540
        E-Mail: cmt@trippscott.com
        Jesse R. Cloyd
        Florida Bar No. 58388
        Email:  jrc@trippscott.com