# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE No. 18-cv-80681-BLOOM/Reinhart

AMERICAN BANCARD, LLC
d/b/a TouchSuite, *et. al.*,

      Plaintiffs,

vs.

EAST PAYMENT SOLUTIONS, INC., *et. al.*,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Amended Complaint, ECF No. [9] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part**.**

### I.  BACKGROUND

Plaintiffs American Bancard LLC d/b/a TouchSuite ("American Bancard") and AB SPE II, LLC ("AB SPE") (collectively "Plaintiffs"), sued Defendants, East Payment Solutions, Inc. ("EPS"), FBS Payment Solutions, LLC ("FBS"), Michael Ben-Simon and Jacob Ben-Simon (collectively "Defendants") for claims under state and federal law. *See* ECF No. [6]. American Bancard provides merchants with electronic equipment and a platform that enables vendors to process credit card transactions. *Id.* at ¶ 10. On February 18, 2014, American Bancard entered into an Independent Sales Agreement (the "Sales Agreement") with EPS in which EPS agreed to solicit customers for American Bancard's services in exchange for the payment of a commission. *Id.* at ¶ 10. Both American Bancard and EPS later modified the Sales Agreement in an

Addendum that required EPS to board a minimum of 20 new merchant accounts per month for the following three years. *Id.* at ¶ 13. On that same day, May 5, 2014, Plaintiffs and EPS, Michael Ben-Simon, Jacob Ben-Simon and non-party Michael Forst entered into a Residual Purchase Agreement ("RPA") in which AB SPE purchased the right to certain residual payments owed to EPS. *Id.* at ¶ 14. Under the RPA, AB SPE would retain the first $25,000 of net residuals each month for the first two years with the remaining residual payments made to EPS. *Id.* In consideration for this purchase, AB SPE paid EPS $900,000 with $800,000 paid at the closing and an additional $100,000 to be paid upon the satisfaction of certain performance criteria. *Id.* at ¶ 15. The RPA was thereafter amended on three separate occasions. *Id.* at ¶ 20. On February 2, 2016, American Bancard and FBS, a newly formed entity created by Michael Ben-Simon, Jacob Ben-Simon, and non-pary Michael Forst, entered into a joint venture with American Bancard pursuant to an Operating Agreement and formed a new entity named TouchSuite East LLC. *Id.* at ¶¶ 23-25. All of the foregoing agreements contain some form of a non-solicitation clause in which Defendants agreed to not solicit or provide services to Plaintiffs' merchants. *Id.* at ¶¶ 12, 18, 26, and 27.

According to the Amended Complaint, in March of 2017, EPS began sending Plaintiffs a reduced number of merchant accounts and "[u]pon information and belief," Defendants were instead sending new merchant deals to other credit card processors in violation of the various agreements. *Id.* at ¶ 28. Similarly, the residuals that AB SPE purchased under the RPA also began to decline with a 72% decline from June of 2017 through the filing of the Amended Complaint in June of 2018. *Id.* at ¶ 29. Plaintiffs further allege "[u]pon information and belief" that Defendants wrongfully held themselves out as Plaintiffs' agents and in doing so, swapped out the credit card terminals belonging to Plaintiffs' merchants from American Bancard

hardware to EPS hardware. *Id.* at ¶ 30. As part of this scheme, Plaintiffs state that Defendants required merchants to execute new agreements transferring control of the merchant to EPS, while telling the merchants that the agreements were a mere formality for new hardware installation. *Id.* And, in some instances, Defendants transferred the merchant account without the completion of any paperwork at all. *Id.* Plaintiffs also allege "[u]pon information and belief" that Defendants forced the signatures of merchants on the agreements without consent, causing the merchant account to be transferred from American Bancard to EPS. *Id.* at ¶ 31. Once the new credit card machines were in place, Defendants programmed the machines to forward all residual payments to EPS instead of Plaintiffs. *Id.* at ¶ 32. According to the Amended Complaint, American Bancard's merchants informed it that EPS entered their places of business and informed the merchants that the credit card processing machines required replacement due to a problem with the processor, and in doing so, transferred the account from American Bancard to EPS. *Id.* at ¶ 33. As a result of the foregoing, Plaintiffs allege multiple forms of damages, such as the failure to pay an advance in the amount of $118,752, the failure to pay a second advance in the amount of $135,580.27, charges on leased equipment in the amount of $51,344, failure to receive merchant residuals that should have been boarded to American Bancard per the monthly minimum or the exclusivity clauses of the agreements, loss of multiple merchant accounts, and loss of good will. *Id.* at ¶ 34.

Based on these allegations, Plaintiffs filed an Amended Complaint alleging claims for: violation of Racketeering Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c) against all Defendants (Count I); preliminary and permanent injunctive relief against all Defendants (Count II); fraud and fraudulent misrepresentation against all Defendants (Count III); breach of the Sales Agreement against EPS (Count IV); breach of the RPA against EPS, Michael

Ben-Simon, and Jacob Ben-Simon (Count V); breach of the Operating Agreement against FBS, Jacob Ben-Simon and Michael Ben-Simon (Count VI); breach of credit line against EPS, Michael Ben-Simon and Jacob Ben-Simon (Count VII); civil conspiracy against all Defendants (Count VIII); civil theft against all Defendants (Count IX); and Conversion against all Defendants (Count X). *See* ECF No. [6]. Plaintiffs' sole basis for federal subject-matter jurisdiction is Count I, asserting a violation of 18 U.S.C. § 1962(c).[1] *Id.* at ¶ 7. Defendants have since filed a Motion to Dismiss, seeking dismissal of every count in the Amended Complaint. *See* ECF No. [9]. Plaintiffs and Defendants each filed a timely Response and Reply respectively. *See* ECF Nos. [11] and [16]. In addition, the Court held a hearing on the Motion on July 31, 2018. *See* ECF No. [25]. The Motion is now ripe for review.

## II.    LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in

---

[1] There is no diversity of citizenship here as Plaintiffs are Florida limited liability companies while Defendant FBS is also a Florida limited liability company. *See* ECF No. [6] at ¶¶ 1, 2, and 4.

favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## III. DISCUSSION

### a. Count I – RICO

Count I of the Amended Complaint alleges a RICO claim against Defendants pursuant to 18 USC § 1962(c). Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section

1961(1)(B), in turn, provides that "racketeering activity" shall include "(B) any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), section 1343 (relating to wire fraud) . . ." And, § 1962(5) defines a "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." Thus, to state a claim for a violation of § 1962(c), Plaintiffs must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985).

With regard to the conduct, Plaintiffs allege that Defendants committed acts of mail and wire fraud. The mail fraud statute, 18 USC § 1341, provides in pertinent part as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both

18 U.S.C. § 1341.

And, as to wire fraud, 18 USC § 1343, provides in relevant part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, **transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce**,

any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343 (emphasis added).

Defendants seek to dismiss Plaintiffs' RICO claim on five grounds: (1) Plaintiffs failed to plead their RICO claim with particularity as required by Federal Rule of Civil Procedure 9(b); (2) Plaintiffs failed to adequately plead predicate acts of mail or wire fraud; (3) Plaintiffs failed to adequately plead continuity; (4) Plaintiffs failed to adequately plead the existence of an "enterprise;" and (5) Plaintiffs failed to adequately plead causation. *See* ECF No. [9]. The Court addresses each of these arguments in turn.

### i. Pleading Standard

Defendants first argue that Plaintiffs failed to comply with Rule 9(b)'s particularity requirement. *See* ECF No. [9] at 3-4. More specifically, they contend that Plaintiffs' RICO claim sounding in wire and mail fraud must be alleged with the specificity required by Rule 9(b). *Id.* Plaintiffs deny that Rule 9(b) applies because the factual information is only known to Defendants and the statements at issue were not made directly to Plaintiffs. ECF No. [11] at 5-6. As a result, Plaintiffs contend that the pleading standard is relaxed, allowing them to make their allegations "upon information and belief." *Id.*

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This particularity requirement applies to civil RICO claims. *See Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 6:07CV222ORL19KRS, 2007 WL 3457585, at *3 (M.D. Fla. Nov. 14, 2007) (citing *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007)). Although Plaintiff correctly states that "the particularity requirements can be relaxed when the

specific information with respect to the fraud is within the exclusive knowledge or control of the defendant," "the information required to plead fraud must be in *exclusive* control of the defendant and cannot be possessed by other entities." *Id.* (quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999)) (emphasis added).

In this case, the allegations of the Amended Complaint contradict Plaintiffs' argument that the information is within Defendants' exclusive control. Paragraph 33 of the Amended Complaint alleges that "American Bancard *has been informed by multiple merchants* that EPS entered their place of business and stated that the merchant needed to switch out their current credit card processing machine due to an issue with the credit card processor." ECF No. [6] at ¶ 33 (emphasis added). Further, at the hearing on the Motion, Plaintiffs admitted that certain merchants provided them information about the alleged fraudulent conduct. Thus, the information is not within the exclusive control of Defendants but is also known to American Bancard's clients, who supplied them with information about what transpired. The relaxed pleading standard, therefore, does not apply under this circumstance, and Plaintiffs must plead their claims of wire and mail fraud with the specificity required by Rule 9(b). Having determined the applicable pleading standard, the Court will now consider whether Plaintiffs can state a claim for a RICO violation as a matter of law.

### ii. Predicate Acts

The Court addresses the first element of a RICO claim – the conduct. Defendants argue that there are no allegations demonstrating that the predicate acts of wire or mail fraud occurred. *See* ECF No. [9] at 4. The Court agrees that the necessary predicate acts are lacking in Count I.

"Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that

scheme." *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1227 (S.D. Fla. 2011) (quoting *Pelletier v. Zweifel,* 921 F.2d 1465, 1498 (11th Cir.1991)). A "scheme to defraud" in turn consists of making misrepresentations that are "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Wilson v. De Angelis*, 156 F. Supp. 2d 1335, 1338 (S.D. Fla. 2001) (quoting *Pelletier,* 921 F.2d at 1498–99).

In paragraph 37 of the Amended Complaint, Plaintiffs allege that Defendants "participated directly or indirectly in the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5) by committing two or more offenses in furtherance of a scheme to defraud the Plaintiffs, *including mail and wire fraud* and the use of other instrumentalities of interstate commerce in aid of their fraudulent activities." ECF No. [6] at ¶ 37 (emphasis added). This allegation, however, is a mere legal conclusion couched as a factual allegation and does not satisfy the pleading requirements of *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (stating that courts "are not bound to accept as true a legal conclusion couched as a factual allegation."). Plaintiffs must allege facts – not mere legal conclusions – to state a claim for relief.

At the hearing, the Court pointed to paragraph 37's references to mail and wire fraud and asked Plaintiffs' counsel to isolate those factual allegations within the Amended Complaint that support the existence of such fraud. With regard to mail fraud, Plaintiffs candidly admitted they have no information and need discovery to provide more specificity in their pleading. Rule 9(b), however, does not allow a party to conduct discovery on a fraud claim to learn the essentials required to satisfy its particularity requirement. *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359-60 (11th Cir. 2006) ("The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim.") (quoting

*United States v. Lab. Corp. of Am.,* 2001 WL 1867721, at *1 (N.D. Ga. May 16, 2001)). At the hearing, Plaintiffs could not identify *any* instances of mail fraud and the Court's review of the Amended Complaint reveals no such instances. Count I, therefore, fails to allege a predicate act of mail fraud to support a RICO claim.

With regard to allegations of wire fraud, Plaintiffs identified only one factual allegation to support this claim. Specifically, paragraph 32 alleges that "[t]he new credit card machines that were placed with merchants were programmed to forward all residual payments that were due to the Plaintiffs, instead to EPS." ECF No. [6] at ¶ 32. According to Plaintiffs, this use of a wire to transfer funds, which should have been directed to Plaintiffs but were wrongfully directed to Defendants, forms the basis of the wire fraud for the RICO claim. Plaintiffs argue the inference is that the wire transfer was done in furtherance of Defendants' fraudulent scheme, consisting of entering the merchants' premises and making false representations that ultimately allowed Defendants to install a replacement credit card processing machine and redirect payments.

To constitute wire fraud, 18 U.S.C. § 1343 requires a transmission "by means of wire, radio, or television communication in interstate or foreign commerce, [of] any writings, signs, signals, pictures, or sounds" for the purpose of executing a scheme or artifice to defraud or for obtaining money or property by false or fraudulent pretenses, representations or promises. The use of the wire here was simply an electronic transfer of funds. That electronic transfer does not constitute a transmission of a writing, sign, signal, picture, or sound for the purpose of executing the scheme to defraud or to obtain the money by false representations. While a wire may have been used, the wire was not used in furtherance of the scheme as the purported fraud consisted of the misrepresentations Defendants made to the merchants upon entering their premises. Absent

allegations demonstrating the existence of wire fraud in accordance with 18 U.S.C. § 1343, Plaintiffs have failed to allege the required predicate acts of racketeering or a pattern of racketeering. And although Plaintiffs informed the Court that they recently discovered new facts, those proffered facts are not relevant to the issue of wire or mail fraud.[2] Plaintiffs' inability to plead additional factual allegations of wire and mail fraud demonstrates that any further amendment would be futile. Plaintiffs have already filed one amended pleading in this litigation, and in doing so, chose to file an amended RICO claim that was a mirror image of the original. In light of Plaintiffs' inability to state a claim for a RICO violation as matter of law, the Court dismisses Count I of the Amended Complaint with prejudice.

### iii. Continuity

With regard to continuity, the Court also agrees with Defendants' argument that Plaintiffs are unable to plead close-ended or open-ended continuity to state a RICO claim as a matter of law. "'Continuity' is both a closed– and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1265 (11th Cir. 2004) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 299, 239-43 (1989)). Here, Plaintiffs can plead neither.

Starting with close-ended continuity, a party must plead "a series of related predicates extending over a substantial period of time." *Id.* Deciding what constitutes a "substantial period of time" sufficient to establish close-ended continuity, the Eleventh Circuit has agreed with the "overwhelming weight of case authority suggest[ing] that nine months is not an adequately

---

[2] At the hearing, Plaintiffs informed the Court that they recently learned that a former employee of EPS started a new entity in Maryland and has begun to board new merchant accounts belonging to Plaintiffs. While such facts may be supportive of the existence of an "enterprise," they are not germane to the existence of predicate acts or continuity.

substantial period of time." *Id.* at 1267. Further, in cases involving "a single scheme with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." *Id.*

Plaintiffs do not specify the length of time during which the alleged mail fraud or wire fraud occurred in the Amended Complaint. At most, Plaintiffs indicate that EPS began sending a reduced number of new merchant accounts starting in March of 2017, but this is not an allegation of the predicate act of mail or wire fraud. *See* ECF No. [6] at ¶ 28. At the hearing, Plaintiffs admitted that they do not know when the alleged mail and wire fraud began, much less how long it was ongoing. Even if the Court used July of 2017 as the starting point, the first month Defendants allegedly withheld residual payments, *id.* at ¶ 82, Plaintiffs filed this lawsuit by May of 2018 – only 10 months later. The Eleventh Circuit has determined that nine months is insufficient to establish close-ended continuity and that even longer periods are insufficient when the RICO allegations involve a single scheme with a discrete goal as is the case here. *Jackson*, 372 F.3d at 1267. Based on the clear guidance provided in *Jackson*, the Court concludes that Plaintiffs cannot allege close-ended continuity as a matter of law.

With regard to open-ended continuity, the Amended Complaint fares no better as it is devoid of any such allegations. "In 'open-ended' cases that rely on alleging the threat of continuity, plaintiffs can meet their burden by establishing either that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' or that 'the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" *Id.* Not only does the Complaint fail to include a single reference to open-ended continuity from which an inference can be made, but the allegations make such an inference implausible. This is because Plaintiff's claim for civil theft recognizes that residual payments withheld for the

months of October of 2017 through the present have been returned to Plaintiffs. *See* ECF No. [6] at ¶ 82. Such a factual allegation contradicts any claim that there is a specific threat that the alleged wire and mail fraud will extend indefinitely into the future or that such fraud is Defendants' ongoing way of doing business. Thus, the Amended Complaint lacks allegations of open-ended continuity and its factual allegations run counter to such a theory in any regard. Further, at the hearing, Plaintiffs admitted that, based on the information currently known, they do not have any facts to support this theory, making any potential amendment futile. Given Plaintiffs' inability to plead either close-ended or open-ended continuity, the Court finds that Count I fails to state a claim as a matter of law for this additional reason, requiring its dismissal with prejudice.

### iv. Enterprise

Defendants next challenge Plaintiffs' ability to plead the existence of an enterprise, arguing that there is no distinctiveness among Defendants. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The Supreme Court explained that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Id.* at 163. "[L]inguistically speaking, the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." *Id.* To find otherwise "would immunize from RICO liability many of those at whom this Court has said

RICO directly aims—e.g., high-ranking individuals in an illegitimate criminal enterprise, who, seeking to further the purposes of that enterprise, act within the scope of their authority." *Id.* at 165. Applying the law, the Supreme Court held that the RICO provision "applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner—whether he conducts those affairs within the scope, or beyond the scope, of corporate authority." *Id.* at 166.

The Eleventh Circuit recently explained that *Cedric Kushner* has a narrow application to a factual scenario in which a corporate officer is the "person" who acts through the corporation to create the RICO enterprise. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("When an individual defendant acts through a corporation, he may have formed an association-in-fact with an entity distinct from himself. In that situation, the rule announced in *Cedric Kushner* makes sense."). "In contrast to an individual, a corporation cannot act except through its officers, agents, and employees. Thus, a corporate defendant acting through its officers, agents, and employees is simply a corporation. Labeling it as an enterprise as well would only amount to referring to the corporate 'person' by a different name." *Id.* A plaintiff cannot plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their corporate roles. *Id.* This is because a corporation necessarily acts through its agents and employees and thus, the corporate person and the alleged enterprise are one in the same. *Id.*

During the recent hearing, the Court asked Plaintiffs to isolate those paragraphs supporting the existence of an enterprise and Plaintiffs directed the Court to paragraphs 30 through 33. These paragraphs, however, lump together the actions of all Defendants without any facts demonstrating the existence of an enterprise. Further, the allegations in the Amended

Complaint indicate that Defendants Michael Ben-Simon and Jacob Ben-Simon, along with non-party Michael Forst, created FBS. The documents attached to the Amended Complaint also indicate that Michael and Jacob Ben-Simon are the principals of EPS and FBS. *See* ECF No. [6] at ¶ 24, ECF No. [6-1] at 12, ECF No. [6-3] at 1, 27; ECF No. [6-4] at 2; ECF No. [6-5] at 2; ECF No. [6-8] at 1, 34, ECF No. [6-9] at 34. As pled, the Amended Complaint fails to adequately allege enterprise as the allegations and the attached documents create an inference that the corporations were simply acting through their principals and there are no allegations to the contrary. As a corporation necessarily acts through its agents and employees, the corporate person and the alleged enterprise here appear to be one in the same. The Court recognizes that Plaintiffs may be able to add additional factual allegations to explain the nature of the enterprise and satisfy this element. However, such an amendment would be futile in light of Plaintiffs' inability to allege the predicate acts of wire and mail fraud as well as continuity as explained above.

### v. Causation

Finally, the Court must address whether Plaintiffs satisfied the requirement of causation in a RICO claim. When determining whether proximate cause has been adequately pleaded, "the central question that [a court] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Marrero v. Benitez*, 1:17-CV-21026-UU, 2017 WL 7796341, at *13 (S.D. Fla. Aug. 3, 2017) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)). The element of proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* The link, however, cannot be "too remote," "purely contingent," or "indirect." *Id.*

In this instance, the Court is satisfied that Plaintiffs have adequately pled the element of causation. In paragraph 32 of the Amended Complaint, which describes the predicate acts, Plaintiffs allege that "[t]he new credit card machines that were placed with merchants were programmed to forward all residual payments that were due to the Plaintiffs, instead to EPS" and in paragraph 34(d), they allege that "as a result of Defendants' misconduct, Plaintiffs have been damaged in numerous ways, including but not limited to . . . Plaintiffs did not receive residuals from merchants that should have been boarded to American Bancard per the monthly minimum and/or exclusivity clauses included in the agreements described therein." ECF No. [6] at ¶¶ 32, 34(d). Similarly, in paragraphs 31 and 33, Plaintiffs allege that EPS transferred American Bancard accounts to itself when it switched the credit card processing machines and forged merchant signatures on transfer agreements, causing a transfer of the account from American Bancard to EPS. *Id.* at ¶¶ 31, 33. Paragraph 34(e) then alleges that "as a result of the Defendants' misconduct," Plaintiffs suffered the "loss of multiple merchant accounts." *Id.* at 34(e). These allegations are enough to demonstrate a direct relation between the injury asserted (loss of residual payments and merchant accounts) and the injurious conduct alleged (the redirecting of payments and transfer of merchant agreements). Thus, the Court finds that the Amended Complaint adequately pled the element of causation. This, however, does not salvage the RICO claim as Plaintiffs remain unable to plead two of the required elements as a matter of law. Thus, Count I must still be dismissed with prejudice.

### b. Counts II through X – State Law Claims

The parties are in agreement that Count I provides the sole basis for federal subject-matter jurisdiction over Plaintiffs' claims as it is the only claim raising a federal question and there is no diversity of citizenship. Thus, subject-matter jurisdiction over the remaining state-

law claims in Counts II through X is supplemental. 28 U.S.C. § 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." Here, the Court declines to exercise supplemental jurisdiction over Counts II through X as the only claim raising a federal question has been dismissed with prejudice. Therefore, the Court has no subject-matter jurisdiction over the remaining state-law claims, requiring their dismissal. By dismissing Counts II through X, the Court does not comment upon or otherwise decide whether Plaintiffs have adequately pled such claims. The Court is simply dismissing Counts II through X without prejudice for lack of subject-matter jurisdiction.

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Amended Complaint, **ECF No. [9],** is **GRANTED in part**. Count I of the Amended Complaint is **DISMISSED WITH PREJUDICE**. Counts II through X are **DISMISSED for lack of subject matter jurisdiction**.

2. Any pending deadlines are **TERMINATED** and any pending Motions are **DENIED as moot**.

3. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 3rd day of August, 2018.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record